

## IN THE UNTED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CARLTON MCDOWELL, SARAH    )
NYAMUSWA, THERON CYRUS, and   )
LANTA EVANS,                       )
                                )   No. 08 C 2966
        Plaintiffs,          )
                                )
     v.                       )   Honorable Charles R. Norgle
                                )
MORGAN STANLEY & CO., INC.     )
                                )
        Defendants.         )

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

      Before the Court is Defendant Morgan Stanley & Co., Inc.'s ("Morgan Stanley") motion to strike Plaintiffs' second amended complaint or, in the alternative, to sever Plaintiffs' claims pursuant to FED. R. CIV. P. 21 for misjoinder. For the following reasons, the motion to strike the second amended complaint is denied, while the motion to sever Plaintiffs' claims is granted.

## I. BACKGROUND

      Plaintiffs are four African Americans who worked at Morgan Stanley as financial advisors. They filed their claims as a single action in this Court, though at all relevant times each of the four Plaintiffs worked in different Morgan Stanley offices, were located in different states, and reported to different managers during different time periods. For instance, Carlton McDowell worked as a financial advisor in Morgan Stanley's Chicago office from 1996 through December 2003. Sarah Nyamuswa worked as a financial manager trainee in the Las Vegas office from April 2007 through February 2008. Theron Cyrus worked as a financial advisor in Morgan Stanley's Beechwood, Ohio office from February 2002 through May 2004. And,

finally, Lanta Evans worked as a financial advisor in the Lutherville, Maryland office from July 2001 through February 2005.  Plaintiffs resigned from their positions, except for Nyamuswa, who was terminated for poor performance.

Plaintiffs initiated this case on May 21, 2008, charging Morgan Stanley with intentional discrimination in violation of 42 U.S.C. § 1981.  They alleged that Morgan Stanley intentionally engaged in a pattern and practice of racial discrimination that denied African American financial advisors the same resources, support and opportunities as their non-African American co-workers.  This discriminatory practice, they say, stemmed from the existence of an alleged corporate culture at Morgan Stanley that bred and "reinforce[d] the differential treatment of African Americans."  First Am. Compl. ¶ 20.

These allegations are not unique.  As it turns out, Plaintiffs are part of a much larger class of former employees that made similar claims against Morgan Stanley a few years back.  The class action was settled for $16 million.  Plaintiffs in this case, for one reason or another, opted out of the larger class and chose to pursue their claims against Morgan Stanley independently.  But they did not file suit where the class action was heard, or before a court that presumably was familiar with all the issues.  And they weren't alone.  Prior to this case, a group of nine financial advisors who also opted out of the larger class filed a similar action in the Northern District of Illinois.  Moore, et al. v. Morgan Stanley, No. 07 C 5606 (N.D. Ill.).  The Moore case was assigned to Judge Conlon, and, after extensive discovery, the parties settled the matter on the eve of trial.  Moore, Dkt. Nos. 313, 314.

Prior to settling the Moore case, Morgan Stanley filed nine separate motions for summary judgment, which targeted each of the nine plaintiffs in the case.  Faced with these motions, Judge Conlon ordered the parties *sua sponte* to appear for a hearing to determine whether joinder was

proper and whether Morgan Stanley was justified in filing the motions separately.  See Moore,

Dkt. No. 295, Hr'g Tr. at 41-42.  After hearing the parties' oral arguments, Judge Conlon stated

that the court was "satisfied that . . . the plaintiffs have sufficiently shown that joinder is

appropriate on all their claims." Id. at 42.  Judge Conlon reasoned that "Morgan Stanley has

never directly asserted improper joinder either in responding to the complaint or during a bumpy

course of discovery experienced in this case." Id.  And, given Morgan Stanley's "tactic" of

treating each plaintiff differently, Judge Conlon found that the nine motions for summary

judgment were "unduly burdensome" and "a waste of resources of the parties and the [c]ourt."

Id.  With that, Judge Conlon struck the motions for summary judgment and scheduled a short due

date for the parties' final pretrial order. Id. at 42-45.  The Court wrote neither a written order,

nor a legal opinion with a discussion of its decision.

      Here, Morgan Stanley took a different approach.  Instead of filing an answer to Plaintiffs'

first amended complaint and engaging in extensive discovery, Morgan Stanley addressed the

issue of joinder promptly and filed a motion to sever Plaintiffs' claims at the outset of the case.

On April 23, 2009 the Court denied Morgan Stanley's initial motion to sever, but directed

Plaintiffs to file a more definite statement that would assist the Court in determining any

outstanding issues related to misjoinder.  Then, rather than filing a more definite statement,

Plaintiffs' filed a second amended complaint.  On June 26, 2009 Morgan Stanley moved to strike

the second amended complaint or, alternatively, to sever Plaintiffs' claims once again.  The

motions are fully briefed, and the Court shall decide each in turn.

## II. DISCUSSION

### A. STANDARDS OF DECISION

#### 1. Motion to Strike

Generally, if a complaint fails to meet the requirements of Rule 8, the Court has the

power to strike either the entire complaint or those parts of the complaint that are "redundant,

immaterial, impertinent or scandalous." FED. R. CIV. P. 12(f); Hardin v. Am. Elec. Power, 188

F.R.D. 509, 511 (S.D. Ill. 1999) (noting that in certain circumstances the court may strike the

entire pleading while granting leave to replead). Motions to strike are disfavored, though,

because they potentially serve only to delay the proceedings.  Heller Fin. v. Midwhey Powder

Co., 883 F.2d 1286, 1294 (7th Cir. 1989).  Thus a successful motion to strike typically seeks to

remove unnecessary clutter from the case, because in that situation the motion expedites the case

and moves the parties forward.  See, e.g., Harman v. Gist, No. 02 C 6112, 2003 WL 22053591,

at *3 (N.D. Ill. Sept. 2, 2003).  In deciding this motion, the Court acknowledges that granting a

motion to strike is a drastic measure, and given the disfavor with which courts look upon such

motions, a reviewing court ordinarily will not strike a pleading unless the court can confidently

conclude that it is prejudicial to the objecting party.  See Talbot v. Robert Matthew Distrib. Co.,

961 F.2d 654, 664 (7th Cir. 1992); Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 11

F. Supp. 2d 1006, 1009 (N.D. Ill. 1998); Lirtzman v. Spiegel, Inc., 493 F. Supp. 1029, 1030

(N.D. Ill. 1980).

#### 2. Permissive Joinder & Misjoinder

Rule 20(a) provides for permissive joinder when two requirements are met.  Morton

Grove Pharms. v. Nat'l Pediculosis Ass'n, 525 F. Supp. 2d 1049, 1050 (N.D. Ill. 2007); Berry v.

Ill. Dep't of Human Servs., No. 00 C 5538, 2001 WL 111035, at *17 (N.D. Ill. Feb. 2, 2001)

("[T]there are two independent requirements for permissive joinder"). First, the cases to be joined must contain a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences. FED. R. CIV. P. 20. Second, there must be a question of law or fact common to all the plaintiffs. Id. In the event the Court finds that joinder is improper, Rule 21 comes into effect and allows the Court to add or drop a party, or sever any claim against another party. See FED. R. CIV. P. 21.

Misjoinder occurs when the parties fail to satisfy either of the requirements for permissive joinder under Rule 20. Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974); Bailey v. N. Trust Co., 196 F.R.D. 513, 515 (N.D. Ill. 2000) (collecting cases). As to Rule 20's first prong, the Seventh Circuit has not yet fashioned a definitive standard for determining what constitutes a single transaction or occurrence. Bailey, 196 F.R.D. at 515 (explaining that "no hard and fast rules have been established" in this context); Maclin, 1996 WL 495558, at *6. As a result, district courts utilize a case-by-case approach and consider the following factors:

> [T]he time period during which the alleged acts occurred, whether the acts of discrimination are related, whether there were differing types of adverse employment actions, whether more than one type of discrimination is alleged, whether the same supervisors were involved, whether employees worked in the same department, whether employees were at different geographical locations, and whether a company-wide policy is alleged.

Berry, 2001 WL 111035, at *17 (citing Byers v. Ill. State Police, No. 99 C 8105, 2000 WL 1808558, at *3-4 (N.D. Ill. Dec. 6, 2000)). A reviewing court may be inclined to find that the claims before it arose out of the same transaction when "separate trials would result in delay, inconvenience and added expense to the parties and the court because of the likelihood of overlapping proof and duplication in testimony." Maclin, 1996 WL 495558, at *6 (citing Mosley, 497 F.2d at 1333). In other words, when deciding a motion to sever, the Court must

keep in mind the purpose of Rule 20, which "is to promote trial convenience and expedite the final determination of disputes, thereby preventing unnecessary multiple lawsuits." Maclin v. N. Telecom, Inc., No. 95 C 7485, 1996 WL 495558, at *6 (N.D. Ill. Aug. 28, 1996) (citing 7 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1652 (1986)).  In the end, the decision of whether to sever a case "lies within the trial court's sound discretion and is subject to appellate review only for clear abuse." Bailey, 196 F.R.D. at 515; Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); Dixon v. CSX Transp., Inc., 990 F.2d 1440, 1443 (4th Cir. 1993).

## B. MOTION TO STRIKE

Morgan Stanley first moves to strike the second amended complaint on grounds that the Plaintiffs failed to comply with the Court's Order to provide a more definite statement regarding the discrimination they allegedly experienced.  Because of this non-compliance, Morgan Stanley requests that the Court strike the second amended complaint in its entirety.  In response, Plaintiffs contend that they provided the Court and Morgan Stanley with several additional and detailed allegations that satisfied the Court's Order.  According to Plaintiffs, these detailed allegations are more than enough to put Morgan Stanley on notice of the claims that it faces and the defenses it needs to put forth.  Plaintiffs therefore maintain that they've complied with Rule 8, and that their complaint should stand.  The Court accepts Plaintiffs' argument.

Upon a close comparison of the first and second amended complaints, the Court finds that Plaintiffs have added just enough detail to comply with Rule 8 and with the Court's Order for a more definite statement.  The Court agrees that these allegations put Morgan Stanley on notice of Plaintiffs' claims and the grounds on which those claims rest.  The complaint contains neither redundant, nor immaterial matter.  As such, the Court cannot conclude that Morgan

6

Stanley would suffer any prejudice if the company was required to answer the complaint in its current form. Striking the complaint at this point would only delay the proceedings until Morgan Stanley filed yet another motion to dismiss, next time focusing solely on its arguments for misjoinder. These are not the circumstances that merit the drastic relief that Morgan Stanley seeks. The motion to strike is therefore denied.

## C. MOTION TO SEVER FOR MISJOINDER

Morgan Stanley's alternative argument is that the four Plaintiffs in this case have been improperly joined. In support, Morgan Stanley stresses that the Plaintiffs have not complied with Rule 20 because they cannot establish that their claims arose out of the same transaction, occurrence, or series of transactions or occurrences. Plaintiffs respond by pointing to the one commonality between their claims – they stem from a company-wide discriminatory policy. This, they say, is enough to satisfy Rule 20's first prong. The Court, however, disagrees.

The parties do not dispute that each of the Plaintiffs in this case has a different story to tell. Though Morgan Stanley's alleged discriminatory conduct may have occurred because of a company-wide policy, that conduct was rooted in individual decisions, made by different supervisors, at different times, and in four different offices. Plaintiffs, in effect, are not only challenging an alleged corporate policy at Morgan Stanley, but also the discretionary decisions of their individual supervisors that put that policy into effect. These decisions cannot go unnoticed. Plaintiffs dispute that the success of their claims depends on the outcome of those discretionary and, as alleged, intentional decisions. In this way, the existence of an alleged company-wide policy likely cannot outweigh the numerous other factors that courts consider in this context. The alleged discretionary and intentional decisions are not somehow homogeneous or intertwined; rather, each individual Plaintiff was subject to different decisions, at different

7

times, in different locations, and, presumably, in different contexts. Furthermore, to the extent Plaintiffs claim that Morgan Stanley subjected them to a constructive discharge, those allegations are so personalized and disconnected that the working conditions in one office would not likely bear on the working conditions in another office. Rule 20 does not operate without limitation; this is precisely the type of joinder that Rule 21 was designed to curb. Berry, 2001 WL 111035, at *17 (finding misjoinder and severing claims where among other things the plaintiffs were employed at six different facilities, had different supervisors and had few common defendants); Maclin, 1996 WL 495558, at *7 (severing claims as misjoined where the discrimination took place at different times, involved different people and was committed by different supervisors in different departments); cf. King v. Gen. Elec. Co., 960 F.2d 617, 626 (7th Cir. 1992) (finding abuse of discretion where trial judge consolidated claims pursuant to Rule 42(a) that involved different time periods and different allegations).

What is more, should these claims be tried together, before a single jury, the risk of confusion, prejudice, overlapping proof and duplicative testimony would be substantially increased, given the differences between each of the Plaintiffs' situations. At trial, the parties would likely call to testify the individual Plaintiffs, their supervisors, co-workers and witnesses from each individual office. Such testimony is highly individualized, as the jury would encounter entirely different people, testifying as to one individual Plaintiff. And, documentary evidence, such as e-mails and other communications outside of Morgan Stanley's policies and directives, likewise would pertain only to the individual Plaintiffs. The application of Morgan Stanley's umbrella policy in one office may not reflect the same application of that same policy in another. If the Court were to allow a jury to hear a combination of the unique and otherwise distinct circumstances that underlie each of the Plaintiffs' claims, the risk of confusion and

8

prejudice to Morgan Stanley would be substantial, while certain individual Plaintiffs might also be disadvantaged.

Further, Plaintiffs' reliance on Jaffe v. Morgan Stanley, No. 06 C 3903 (N.D. Cal.) (class action), Augst-Johnson v. Morgan Stanley, No. 06 C 1142 (D.D.C.) and Moore v. Morgan Stanley, 07 C 5606 (N.D. Ill.) (Conlon, J.) in support of its argument in opposition is misplaced. With respect to Jaffe and Augst-Johnson, Plaintiffs assert that Morgan Stanley, while settling those cases, represented that "the employment policies and practices and legal issues at issue in this case present common questions of law and fact." Pls. Memo. in Opp'n at 7. This argument, though, fails to carry the day. While Plaintiffs may believe that the representations that Morgan Stanley made in furtherance of a settlement agreement are somehow admissions or binding on this Court, they are mistaken. There may be disclaimers of fault or liability within the settlement agreement, as often is the case. Any representations that Morgan Stanley made with regard to its policies and practices in two separate cases, comprised of different plaintiffs and factual circumstances, hold no precedential value and shall not be applied in this case.

The same goes for the Moore case. As we explained above, Judge Conlon's decision in Moore came at a vital moment in the parties' case – summary judgment. At the time, the parties had completed discovery and had been operating under the assumption that the plaintiffs would be tried together in a single case. Morgan Stanley, to its detriment, failed to raise the issue of misjoinder at an earlier point and eventually swamped the plaintiffs and the court with nine separate motions for summary judgment. This prompted Judge Conlon to issue an oral ruling, based mostly on Morgan Stanley's failure to raise the issue and the company's perceived questionable tactics. These circumstances are not at all what the Court faces in this case, and thus, despite Plaintiffs' insistence to the contrary, the instant case is distinguishable from Moore.

Arguably, each Morgan Stanley supervisor at one point may have engaged in conduct similar to that of the other supervisors, but this does not mean that those supervisors engaged in *related* conduct. This distinction is crucial, since none of the allegations cited by Plaintiffs link their claims to a single, common transaction or occurrence with respect to their supervisors' discretionary decisions. Indeed, Plaintiffs cannot allege that their individual supervisors acted in concert with one another, nor can they allege that they consulted with one another. One or more defendants' similar conduct, without anything more, does not rise to a sufficient level that would justify joining those defendants in a single action pursuant to Rule 20. See Ramos v. Playtex Prods., Inc., No. 08 C 2703, 2008 WL 4066250, at *3 (N.D. Ill. Aug. 27, 2008) (finding misjoinder because plaintiffs' allegations suggested similar conduct, not related conduct); see also DIRECTV, Inc. v. Delaney, No. 03 C 3444, 2003 WL 24232530, at *4 (N.D. Ill. Nov. 20, 2003) (finding that although the defendants committed similar conduct, "because each defendant made different purchases and none of the named defendants is alleged to have acted in connection with any other, we agree . . . that the claims against these defendants are not logically related.").

Finally, the Court acknowledges that although misjoinder of parties is not a basis for dismissal, there is no specific procedure for dividing up a single case into separate cases pursuant to a finding of misjoinder. FED. R. CIV. P. 21. Thus, in the Court's discretion, the claims brought by Plaintiff Carlton McDowell, the only Plaintiff from Chicago, shall remain before this Court. All other claims and allegations as to the three remaining Plaintiffs shall be severed from Case No. 08 C 2966, and it is left to those Plaintiffs to file new complaints, which will be assigned new case numbers and will be randomly assigned new judges in accordance with the usual procedures in the courts of proper venue.

## III. CONCLUSION

For these reasons, Morgan Stanley's motion to strike Plaintiffs' second amended complaint is denied, while the motion to sever pursuant to FED. R. CIV. P. 21 is granted.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: 8-10-09

11